IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JACQUELINE MONCRIEF, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )     Case No. 2:21-cv-172-CWB |
| | ) |
| KILOLO KIJAKAZI,[1] | ) |
| Acting Commissioner of | ) |
| Social Security, | ) |
| | ) |
|     Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

**I.    Introduction and Administrative Proceedings**

Jacqueline Moncrief ("Plaintiff") filed an application for Disability Insurance Benefits under Title II of the Social Security Act on October 11, 2018 wherein she alleged disability onset as of November 17, 2016 due to back problem, neck problem, high blood pressure, hand/wrist problem, and bulging disc. (Tr. 15, 62-63, 73).[2] The claim was denied at the initial level on February 11, 2019. (Tr. 78). Plaintiff then requested *de novo* review by an administrative law judge ("ALJ"). (Tr. 15, 87-89). The ALJ subsequently heard the case on August 25, 2020, at which time testimony was given by Plaintiff (Tr. 15, 29-51) and by a vocational expert (Tr. 15, 51-60). The ALJ took the matter under advisement and issued a written decision on September 2, 2020 that found Plaintiff not disabled. (Tr. 15-25).

The ALJ's written decision contained the following enumerated findings:

1. The claimant last met the insured status requirements of the Social Security Act on March 31, 2020 (Exhibit 5D).

---

[1] Kilolo Kijakazi became Acting Commissioner for the Social Security Administration on July 9, 2021 and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2] References to pages in the transcript are denoted by the abbreviation "Tr."

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of November 17, 2016 through her date last insured of March 31, 2020 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: cervical and lumbar degenerative disc disease, status post lumbar fusion and history of cervical fusion, spinal stenosis, post laminectomy syndrome, lumbar radiculitis, failed back syndrome of lumbar spine, cervicalgia and chronic obstructive pulmonary disease. (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant is limited to frequent using foot controls with the bilateral lower extremities, frequent reaching with bilateral upper extremities, but never perform overhead reaching with bilateral upper extremities. The claimant is limited to occasional balancing, stooping, kneeling, crouching, crawling and climbing on ramps and stairs, but never climbing on ladders, ropes or scaffolds. The claimant is limited to frequent operating a motor vehicle. The claimant is limited to occasional exposure to atmospheric conditions, extreme cold, heat, wetness, humidity, but never have exposure to vibration and hazards such as unprotected heights and dangerous moving mechanical parts.

6. Through the date last insured, the claimant was capable of performing past relevant work as an administrative secretary and administrative/clerical worker as generally performed in the national economy. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from November 17, 2016, the alleged onset date, through March 31, 2020, the date last insured (20 CFR 404.1520(f)).

(Tr. 17, 18, 19, 23-24). On December 31, 2020, the Appeals Council denied Plaintiff's request for review (Tr. 1-5), thereby rendering the ALJ's decision the final decision of the Commissioner. *See, e.g., Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

Plaintiff now asks the court to reverse the final decision and to award benefits or, alternatively, to remand the case for a new hearing and further consideration. (Doc. 1 at p. 2; Doc. 11 at p. 9). As contemplated by 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the exercise of full jurisdiction by a United States Magistrate Judge (Docs. 15 & 16), and the undersigned finds that the case is ripe for review pursuant to 42 U.S.C. § 405(g). Specifically, the court construes Plaintiff's supporting brief (Doc. 11) as a motion for summary judgment and the Commissioner's opposition brief (Doc. 12) as a competing motion for summary judgment. Upon consideration of the parties' submissions, the relevant law, and the record as a whole, the court concludes that Plaintiff's motion for summary judgment is due to be denied, that the Commissioner's motion for summary judgment is due to be granted, and that the final decision is due to be affirmed.

## II.   Standard of Review and Regulatory Framework

The court's review of the Commissioner's decision is a limited one. Assuming the proper legal standards were applied by the ALJ, the court is required to treat the ALJ's findings of fact as conclusive so long as they are supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla," but less than a preponderance, "and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence.") (citations omitted). The court thus may reverse the ALJ's decision only if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *See Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). Reversal is not warranted

simply because the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). Despite the deferential nature of its review, however, the court must look beyond those parts of the record that support the decision, must view the record in its entirety, and must take account of evidence that detracts from the evidence relied on in the decision. *See Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986); *see also Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

To qualify for disability benefits and establish entitlement for a period of disability, a person must be unable to:

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[3] To make such a determination, the ALJ employs a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520 & 416.920.

> (1) Is the person presently unemployed?
>
> (2) Is the person's impairment severe?
>
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
>
> (4) Is the person unable to perform his or her former occupation?
>
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The burden of proof rests on the claimant through step four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). A claimant establishes a *prima facie* case of a qualifying disability once he or she has carried the burden of proof from step one through step four. *Id*. At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform. *Id*.

In order to assess the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Phillips*, 357 F.3d at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id*. It may contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy that the claimant can perform. *Id*. at 1239. To do so, the ALJ can use either the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE"). *Id*. at 1239-40. The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual, and combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*. at 1240.

---

[4] *McDaniel* is a Supplemental Security Income case. Nonetheless, the same sequence applies to claims for Disability Insurance Benefits brought under Title II. SSI cases arising under Title XVI therefore are appropriately cited as authority in Title II cases, and vice versa. *See, e.g., Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

**III.     Issues on Appeal**

Plaintiff raises two issues on appeal: (1) whether the ALJ erred in affording little to no evidentiary value to the opinion of a treating physician, Dr. John Dorchak; and (2) whether the ALJ failed to properly evaluate Plaintiff's subjective allegations of pain or other symptoms. (Doc. 11 at pp. 1, 8-9).[5]

**IV.     Discussion**

    **A.     Evaluation of Dr. John Dorchak's Opinion**

Plaintiff argues that the ALJ failed to afford sufficient weight to the opinion of Dr. John Dorchak, who was Plaintiff's treating orthopedic surgeon. (Doc. 11 at p. 3). Plaintiff maintains that Dr. Dorchak's opinion was supported by the September 8, 2016 opinion of Dr. Rodney James, who opined that Plaintiff could not walk 200 feet without stopping to rest and that she had a long term disability, as well as Dr. James's records that documented clinical findings in the thoracic and lumbar spine along with diminished reflexes bilaterally. (*Id*. at p. 4, citing Tr. 255, 373). In further support of Dr. Dorchak's opinion, Plaintiff cites pain management records in which she was diagnosed with "Failed back syndrome of lumbar spine." (*Id*. citing Tr. 329, 332, 336, 372). Plaintiff asserts that more weight is accorded to the opinion of a specialist than the opinion of a source who is not a specialist and argues that the ALJ's failure to accord greater weight to the opinion of the treating sources constituted reversible error. (*Id*. at pp. 4, 6).

Because Plaintiff's claim was filed on October 11, 2018 (Tr. 15), review must be guided by the revised regulations applicable to claims filed on or after March 27, 2017. *See* 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. The revised regulations no longer

---

[5] Although Plaintiff states the issue as whether the ALJ erred in finding that she could return to her past relevant work, Plaintiff frames her argument as whether the ALJ properly considered her subjective statements under the pain standard in the regulations.

use the phrase "treating source" but instead use "your medical source(s)." *See* 20 C.F.R. § 404.1520c; *Nix v. Saul*, No. 4:20-CV-00790, 2021 WL 3089309 at *5 (N.D. Ala. July 22, 2021). For claims governed by the revised regulations, the agency thus "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a); *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 898 (11th Cir. 2022). "Further, the regulations governing claims filed on or after March 27, 2017, no longer mandate particularized procedures that the adjudicator must follow in considering opinions from treating sources (*e.g.*, requirement that adjudicators must 'give good reasons' for the weight given a treating source opinion)." *Nix*, 2021 WL 3089309 at *6 (citing 20 C.F.R. § 404.1520c(b)). Instead, the "new regulations require an ALJ to apply the same factors when considering the opinions from *all* medical sources." *Simon v. Kijakazi*, No. 8:20-CV-1650, 2021 WL 4237618 at *3 (M.D. Fla. Sept. 17, 2021) (emphasis in original) (citing 20 C.F.R. § 404.1520c(a)).

Stated differently, in evaluating the persuasiveness of the medical opinion(s) or prior administrative medical finding(s), "[the agency] will consider those medical opinions or prior administrative medical findings from that medical source together" using the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(a), (c). "The most important factors … [used to] evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability ... and consistency." 20 C.F.R. § 404.1520c(a), (b)(2); *Simon*, 2021 WL 4237618 at *3. Therefore, "the ALJ must explain how he or she considered the supportability and consistency factors." *Wynn v. Kijakazi*, No. 8:20-CV-2862, 2022 WL 1115296 at *4 (M.D. Fla. Apr. 14, 2022). "The ALJ

must explain in his decision how persuasive he finds a medical opinion and/or a prior administrative medical finding based on these two factors." *Nix*, 2021 WL 3089309 at *6 (citing 20 C.F.R. § 404.1520c(a)-(c)). "However, the ALJ need not use any magic words in discussing whether a medical opinion is supported by evidence from the medical source himself and whether the opinion is consistent with other evidence of record." *Thaxton v. Kijakazi*, No. 1:20-CV-00616, 2022 WL 983156 at *8 (M.D. Ala. Mar. 30, 2022); *Williamson v. Kijakazi*, No. 2:20-CV-772, 2022 WL 2257050 at *3 (M.D. Ala. June 23, 2022). Moreover, "'[t]he ALJ may but is not required to explain how he considered the other remaining factors.'" *Id.* at *4 (citation omitted); 20 C.F.R. § 404.1520c(b)(2). And the ALJ is "not required to articulate how [he] considered evidence from nonmedical sources." 20 C.F.R. § 404.1520c(d). Further, "[t]he ALJ is under no obligation to 'bridge' every piece of evidence he finds inconsistent with a specific opinion. ... Nothing requires the ALJ to discuss every piece of evidence so long as the decision does not broadly reject evidence in a way that prevents meaningful judicial review." *Gogel v. Comm'r of Soc. Sec.*, No. 2:20-CV-366, 2021 WL 4261218 at *9 (M.D. Fla. Sept. 20, 2021) (citations omitted).

As an initial matter, and as correctly observed by the ALJ, Dr. Dorchak's statement that Plaintiff "is incapable of gainful employment and will be incapable of gainful employment indefinitely due to her chronic back condition," and Dr. James's statement that Plaintiff had a "Long-term Disability," (Tr. 22, 230, 373), constitute conclusions reserved to the agency. *See, e.g., Clark v. Kijakazi*, No. 3:21-CV-02, 2022 WL 3756908 at *4 (M.D. Ala. Aug. 30, 2022); *Romeo v. Comm'r of Soc. Sec.*, 686 F. App'x 731, 733 (11th Cir. 2017) ("A medical opinion that a claimant is disabled constitutes an opinion on an issue reserved to the Commissioner and is not controlling."). Only the agency is "responsible for making the determination or decision

about whether [a claimant] meet[s] the statutory definition of disability." *See* 20 C.F.R. § 404.1527(d)(1). "A statement by a medical source that [the claimant is] 'disabled' or 'unable to work' does not mean that [the agency] will determine that [the claimant is] disabled." *Id.*; C.F.R. § 404.1520b(c)(3) ("[W]e are responsible for making the determination or decision about whether you are disabled"); 20 C.F.R. § 404.1546(c) ("[T]he administrative law judge … is responsible for assessing your residual functional capacity"). The regulations even expressly provide that the agency "will not provide any analysis about how [it] consider[s] such evidence" because it "is inherently neither valuable nor persuasive to the issue of whether [the claimant is] disabled … under the Act." 20 C.F.R. § 404.1520b(c).

Further, as to Plaintiff's assertions that more weight is accorded to the opinion of a specialist than the opinion of a source who is not a specialist and that treating sources are accorded greater weight, an ALJ is no longer required (or allowed) to assign specific weight to a medical opinion based on a formal hierarchy. *Morris v. Soc. Sec. Admin., Comm'r*, No. 2:21-CV-00029, 2022 WL 303303 at *3 (N.D. Ala. Feb. 1, 2022) ("The current regulations followed by ALJs in reaching their decisions affirmatively disclaim any formal physician hierarchy. In conducting their analysis, ALJs 'will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) including those from [the claimant's] medical sources.'") (quoting 20 C.F.R. § 404.1520c(a)). The ALJ thus did not err by not giving controlling weight to Dr. Dorchak's or Dr. James's statement or for not articulating good cause for rejecting the statements. An ALJ's determination is required to be based on all evidence in the record. *See, e.g., Matos v. Comm'r of Soc. Sec.*, No. 21-11764, 2022 WL 97144 at *4 (11th Cir. Jan. 10, 2022) ("This new regulatory scheme no longer requires the ALJ to either assign more weight to medical opinions from a claimant's treating source or explain why good

9

cause exists to disregard the treating source's opinion."). *See also* 20 C.F.R. § 404.1520(a)(3) ("We will consider all evidence in your case record when we make a determination or decision whether you are disabled.").

In considering Dr. Dorchak's April 13, 2017 treatment note in which he opined that Plaintiff was "incapable of gainful employment," the ALJ stated that while the question of disability was a question reserved for the Commissioner, Dr. Dorchak's opinion was not supported by his own treatment records. (Tr. 22-23). The ALJ noted that the neurological examination from the same visit revealed that Plaintiff had a normal gait and negative straight leg raises, that her neurologic examination was considered to be intact, and that the x-ray reviewed by Dr. Dorchak showed intact hardware and no new abnormal findings. (Tr. 21, 23, 230). The ALJ also noted that an MRI report from May 4, 2017 showed no new lesions or no new reoccurrences of disc herniation. (Tr. 21, 238). The ALJ further stated that Dr. Dorchak's opinion was not consistent with either Plaintiff's pain management or chiropractic records and that it was not supported by Dr. Maria Wellman's opinion, which was deemed well supported by the objective evidence. (Tr. 23). The ALJ noted that the "abnormal findings of lumbar tenderness, decreased lumbar range of motion and intermittent positive straight leg [raises] in bilateral lower extremities [were] simply not sufficient to warrant a not sustain outcome [sic]." (Tr. 23). For these reasons, the ALJ found Dr. Dorchak's opinion to be not persuasive. (Tr. 23).

The ALJ noted that Plaintiff returned to chiropractic care beginning in March 2017 through July 2019 and that, despite consistent reports of lower back pain, Plaintiff's chiropractic records routinely showed that she reported doing more activity than alleged in either her function report or hearing testimony. (Tr. 21). The ALJ referred to a treatment note from April 18, 2018 that Plaintiff had been spring cleaning, a July 23, 2018 note that she moved a forty gallon tub into

storage, and 2019 records that mentioned that she performed lots of yard work, including a three day flower garden project in May, and that she had hurt herself when pulling luggage while traveling in June. (Tr. 21, 243, 246, 319-20). The ALJ noted that Plaintiff clarified that she was not as active in those endeavors, *i.e.*, that her sister moved the tubs and her husband assisted in planting flowers so that she did not have to bend. (Tr. 21, 49-51).

The ALJ considered Plaintiff's pain management records that showed she resumed pain management treatment in September 2018 and continued to participate regularly up to her date last insured in March 2020. (Tr. 21). According to the ALJ, the pain management records consistently showed that Plaintiff had tenderness in her lumbar area, decreased range of motion, and positive bilateral leg raises but that she reported being able to perform her activities of daily living with her current treatment where the lumbar transformational epidural steroid injection provided 80 percent relief for 11 weeks. (Tr. 21, 327). The ALJ noted that her physical examination revealed tenderness to palpation in her lumbar spine, decreased range of motion, and positive straight leg raises bilaterally but that her paraspinal muscular strength was within normal limits, that her lower extremities range of motion was within normal limits bilaterally, and that no pain was observed in motion of her lower extremities. (Tr. 21, 329). The ALJ also noted that her pain management records after her date last insured showed similar findings. (Tr. 21, 370, 372).

In addition, the ALJ considered the February 8, 2019 prior administrative medical findings of the state agency medical consultant, Maria Wellman, M.D. (Tr. 22, 62-72). The ALJ summarized Dr. Wellman's findings as follows:

> Dr. Wellman opined that the claimant would be limited to a reduced range of light work with additional postural and environmental limitations (Exhibit 1Ap7-9). The claimant is limited to frequent balancing and to occasional stooping, kneeling, crouching, crawling and climbing on ramps and stairs, but never climbing on ladders, ropes or scaffolds (Exhibit 1Ap8). The claimant must avoid concentrated exposure to extreme cold, humidity, vibration and must avoid all exposure to

> hazards like hazardous machinery and unprotected heights (Exhibit 1Ap8-9). Dr. Wellman supported her medical opinion with the clinical findings from the claimant's pain management doctor from September 2018 and her post-surgery x-ray lumbar spine report (Exhibit 1Ap9). Dr. Wellman included in her explanation the musculoskeletal examination findings of the claimant's lumbosacral spine (Id). Dr. Wellman noted that the claimant did have decreased range of motion in her spine, paraspinal musculature tenderness to palpitation and positive straight leg raises bilaterally (Exhibit 1Ap9). Dr. Wellman also noted that the claimant's strength and muscle tone was within normal limits and that her 2017 x-ray showed that her previous L4-L5 fusion did not reveal either any new lesions or recurrence of disc herniation (Id).

(Tr. 22, 68-70).

The ALJ found that Dr. Wellman's opinion was consistent with the medical records and was largely consistent with the records obtained at the hearing level. (Tr. 22). The ALJ noted that Plaintiff's treatment for her back had been limited pain management epidural injections every few months with moderate success and that the examination findings and diagnostic testing did not show any worsening or new abnormal findings. (Tr. 22). The ALJ found Dr. Wellman's opinion to be persuasive, but because the ALJ had the opportunity to obtain additional evidence, including Plaintiff's hearing testimony, the ALJ included additional restrictions into Plaintiff's RFC to guard against an exacerbation of symptoms. (Tr. 22).

The ALJ additionally considered the findings of Alan M. Babb, M.D., who conducted a consultative examination on January 22, 2019. (Tr. 21). The ALJ stated the following:

> [] Dr. Babb noted that the claimant ambulated normally, used no assistive devices, and did not appear to be in distress (Id). Upon physical examination, Dr. Babb observed that no clubbing or cyanosis in her extremities, that her peripheral pulses intact, that she had normal abduction of the shoulders with normal flexion extension of the wrists and elbows and that she had normal rotation of the neck (Id). He also reported that the claimant's anterior flexion of her back 100 degrees, she could easily touch her toes, that her straight leg reflex was 90 degrees and that she had normal passive range of motion of the hips, knees, and ankles (Id). Finally, he noted that the claimant's sensory motor exam and reflex exam was normal (Id).

(Tr. 21-22, 307-310).

Based upon the foregoing, the court concludes that the ALJ thoroughly discussed the medical evidence and properly considered the factors of supportability and consistency in assessing the opinion evidence in accordance with the revised regulations. *See* 20 C.F.R. § 404.1520c(a) ("The most important factors ... [used to] evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability ... and consistency.").

### B.     Evaluation of Plaintiff's Subjective Statements of Pain

Plaintiff argues that the evidence does not support the ALJ's assessment of her RFC. (Doc. 11 at p. 7).  Specifically, Plaintiff contends that the ALJ erred in failing to properly consider severe pain that stemmed from her medically determinable impairments. (*Id*. at p. 8).  Plaintiff asserts that the ALJ did not address her testimony that she could only sit, stand, and walk for short periods before needing to change positions and that the ALJ should have included a sit/stand option in her RFC.  (*Id*., citing Tr. 44-45).  Plaintiff maintains that she suffered from severe low back pain despite undergoing injections, physical therapy, chiropractic management, and nerve blocks, that her neck and low back pain were constant, and that treatment did not provide material relief but that the ALJ improperly equated the ability to perform some activity with the ability to perform sustained sedentary work without any interruption of symptoms. (*Id*.).  Plaintiff further asserts that the ALJ did not articulate reasons for discrediting her testimony, as the ALJ merely summarized the medical evidence without specifically stating any reasons why the allegations were not credible. (*Id*.).

In determining whether a claimant is disabled, the claimant's symptoms, including pain, are considered to the extent they are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. § 404.1529(a).  The Commissioner will consider a claimant's statements about his or her symptoms and any description that the claimant's medical sources or nonmedical

13

sources may provide about how the symptoms affect the claimant's activities of daily living and ability to work. *Id*. However, a claimant's statements about pain or symptoms alone are not enough to establish the existence of a physical or mental impairment or disability. *Id*.; SSR 16-3p, 2017 WL 5180304 at *2 (S.S.A. Oct. 25, 2017); *Turner v. Kijakazi*, No. 1:19-CV-774, 2021 WL 3276596 at *9 (M.D. Ala. July 30, 2021) ("[A]n ALJ is not required to accept a claimant's subjective allegations of pain or symptoms."). The regulations set out a two-step process for the evaluation of subjective complaints. *Id*.; SSR 16-3p, 2017 WL 5180304 at *3. To establish a disability based on testimony of symptoms, the claimant must provide evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged symptoms, or (2) evidence establishing that the objectively determined medical condition could be reasonably expected to give rise to the alleged symptoms. *Carroll v. Soc. Sec. Admin., Comm'r*, No. 6:21-CV-00014, 2022 WL 3718503 at *12 (N.D. Ala. Aug. 29, 2022) (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002)); 20 C.F.R. § 404.1529(a)-(b); SSR 16-3p, 2017 WL 5180304 at *3.

"Consideration of a claimant's symptoms therefore involves a two-step process, wherein the SSA first considers whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the claimant's symptoms, such as pain." *Mixon v. Kijakazi*, No. 8:20-CV-2991, 2022 WL 2816964 at *3 (M.D. Fla. July 19, 2022); 20 C.F.R. § 404.1529(a)-(b); SSR 16-3p, 2017 WL 5180304 at *2-3. Once an underlying physical or mental impairment that could reasonably be expected to produce the claimant's symptoms is established, the ALJ must then consider all of the evidence in the record to evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit the claimant's capacity for work. SSR 16-3p, 2017 WL 5180304 at *3-4; 20 C.F.R. § 404.1529(a)-

(c); *Stromgren v. Kijakazi*, No. 3:21-CV-908, 2022 WL 1205347 at *5 (N.D. Fla. Mar. 11, 2022), *report and recommendation adopted*, No. 3:21-CV-908, 2022 WL 1204519 (N.D. Fla. Apr. 22, 2022). In doing so, SSR 16-3p and the regulations require an ALJ to consider certain factors, including: (1) daily activities; (2) location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken; (5) treatment, other than medication, to relieve pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) any other factors concerning functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2017 WL 5180304 at *8-9; 20 C.F.R. § 404.1529(c)(3).

The ALJ will also consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between claimant's statements and the rest of the evidence, including the history, signs and laboratory findings, and statements by treating and non-treating sources or other persons about how the symptoms affect the claimant. 20 C.F.R. § 404.1529(c)(4). "However, Eleventh Circuit case law does not require an ALJ to enumerate every factor in every decision." *Alexander v. Comm'r of Soc. Sec. Admin.*, No. 6:20-CV-01862, 2022 WL 4291335 at *5 (N.D. Ala. Sept. 16, 2022) (citing *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995) (concluding that the ALJ need not cite to "particular phrases or formulations" but must provide reasons that would enable a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole)). If the ALJ discredits a claimant's subjective statements, the ALJ "must articulate explicit and adequate reasons for doing so." *Foote*, 67 F.3d at 1561-62; *Patterson v. Kijakazi*, No. 8:21-CV-359, 2022 WL 3028058 at *3 (M.D. Fla. Aug. 1, 2022). That is, "[w]here proof of a disability is based upon subjective evidence and a credibility determination is a critical factor in the decision, if the ALJ discredits the claimant's testimony as to his subjective symptoms,

15

the ALJ must either explicitly discredit such testimony or the implication from the ALJ's opinion must be so clear as to amount to a specific credibility finding." *Martinez v. Comm'r of Soc. Sec.*, No. 21-12116, 2022 WL 1531582 at *2 (11th Cir. May 16, 2022) (citing *Foote*, 67 F.3d at 1562). "Subjective complaint credibility is the province of the ALJ." *Williams v. Kijakazi*, No. 2:20-CV-277, 2022 WL 736260 at *2 (M.D. Ala. Mar. 10, 2022) (citing *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014)).

The record reflects that the ALJ sufficiently addressed Plaintiff's subjective statements in accordance with the regulations and considered the entire medical record when evaluating Plaintiff's subjective statements. The ALJ stated, in part, the following:

> In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p. The undersigned also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c.
> . . .
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(Tr. 19, 20).

The ALJ noted that in terms of Plaintiff's physical limitations the medical evidence established a longitudinal history of orthopedic treatment for back pain that included spinal surgery, pain management, physical therapy, and chiropractic care. (Tr. 20). The ALJ stated that after the alleged onset date but prior to her date last insured, Plaintiff was diagnosed with lumbar degenerative disc disease, status post lumbar fusion, spinal stenosis, post laminectomy syndrome, lumbar radiculitis, and failed back syndrome of lumbar spine. (Tr. 20). As previously discussed,

the ALJ considered the pain management and chiropractic records, the consultative examination and opinion of Dr. Babb, the prior administrative medical findings of Dr. Wellman, the medical opinion and treatment records of Dr. Dorchak, and the medical opinion of Dr. James.  (Tr. 21-23).  The ALJ noted that despite consistent reports of lower back pain, Plaintiff's chiropractic records routinely showed that she reported doing more activity than alleged in either her function report or hearing testimony.  (Tr. 21).  The ALJ also noted that while the pain management records consistently showed that Plaintiff had tenderness in her lumbar area, decreased range of motion, and positive bilateral leg raises, she reported that she was able to perform her activities of daily living with her current treatment where the lumbar transformational epidural steroid injection provided 80 percent relief for 11 weeks, and that while her physical examination revealed tenderness to palpation in her lumbar spine, decreased range of motion, and positive straight leg raises bilaterally, her paraspinal muscular strength was within normal limits, her lower extremities range of motion was within normal limits bilaterally, and no pain was observed in motion of her lower extremities.  (Tr. 21, 327, 329).  *See* 20 C.F.R. § 404.1529(c)(3)(i) (stating that an ALJ will consider a claimant's daily activities in evaluating the limiting effects of the claimant's impairments and related symptoms); *Majkut v. Comm'r of Soc. Sec.*, 394 F. App'x 660, 663 (11th Cir. 2010) ("Although a claimant's admission that she participates in daily activities for short durations does not  necessarily disqualify the claimant from disability, that does not mean it is improper for the ALJ to consider a claimant's daily activities at all.") (internal citation omitted).

      The ALJ considered Dr. Babb's consultative examination findings, noting that although Plaintiff reported that she was unable to work due to her chronic back pain, Dr. Babb reported that Plaintiff ambulated normally, used no assistive devices, and did not appear to be in distress, and that upon physical examination Plaintiff had no clubbing or cyanosis in her extremities, had intact

17

peripheral pulses, had normal abduction of the shoulders with normal flexion extension of the wrists and elbows, and had normal rotation of the neck. (Tr. 21, 307-310). The ALJ also noted that Dr. Babb's examination showed that Plaintiff's anterior flexion of her back was 100 degrees, that she could easily touch her toes, that her straight leg reflex was 90 degrees, that she had normal passive range of motion of the hips, knees, and ankles, and that her sensory motor examination and reflex examination was normal. (Tr. 21-22, 307-310). The ALJ explained that while the objective diagnostic and clinical findings supported some degree of limitation due to the Plaintiff's continued back pain, tenderness in her lumbar area, decreased range of motion, and positive bilateral leg raises, Dr. Babb's findings would not support greater limitations than provided in the RFC. (Tr. 22).

The ALJ discussed the prior administrative findings of Dr. Wellman and found that Dr. Wellman's opinion was consistent with the medical records and was largely consistent with the records obtained at the hearing level—noting that Plaintiff's treatment for her back had been limited pain management epidural injections every few months with moderate success and that the examination findings and diagnostic testing did not show any worsening or new abnormal findings. (Tr. 22). The ALJ considered additional evidence, including Plaintiff's hearing testimony, and as a result included additional restrictions into Plaintiff's RFC to guard against any exacerbations of symptoms. (Tr. 22). The ALJ also discussed Dr. Dorchak's opinion and Plaintiff's neurological examination that showed a normal gait and negative straight leg raises, as well as an x-ray that showed no new abnormal findings and an MRI report that showed no new lesions or reoccurrences of disc herniation. (Tr. 21, 23, 230, 238). The ALJ explained that Plaintiff's RFC was supported by "her statements of record, including those found in her chiropractic records and her hearing testimony, her objective MRI reports that showed no further degeneration post-

18

surgery, and in her examination findings that showed that she was able to ambulate despite having tenderness, some decreased lumbar range of motion and positive straight leg raises." (Tr. 23).

"[A]n ALJ is not required to accept a claimant's subjective allegations of pain or symptoms." *Turner*, 2021 WL 3276596 at *9; 20 C.F.R. § 404.1529(a) ("[S]tatements about [a claimant's] pain or other symptoms will not alone establish that [a claimant is] disabled."). As explained above, the court finds that the ALJ properly evaluated Plaintiff's subjective complaints in light of the evidence of record and formulated appropriate RFC restrictions to accommodate the limitations arising from her physical impairments. Credibility determinations are the province of the ALJ, *Mitchell*, 771 F.3d at 782, and the ALJ sufficiently cited evidence in the record for finding that Plaintiff's statements were not entirely consistent with the record as a whole. *See Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) (footnote omitted) (The appropriate question for a reviewing court "is not ... whether [the] ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it."). Because the ALJ properly considered the objective medical evidence along with the other evidence in the record in accordance with 20 C.F.R. § 404.1529(c)(1)-(3), the court finds that the ALJ's evaluation of Plaintiff's subjective statements is supported by substantial evidence.

## V.     Conclusion

After carefully and independently reviewing the record, and for the reasons stated above, the court concludes as follows:

- that Plaintiff's motion for summary judgment (Doc. 11) is due to be **DENIED**;
- that the Commissioner's motion for summary judgment (Doc. 12) is due to be **GRANTED**; and
- that the Commissioner's decision is due to be **AFFIRMED**.

A separate judgment will issue.

    **DONE** this the 21st day of September 2023.

                                       /s/ Chad W. Bryan
                                       **CHAD W. BRYAN**
                                       **UNITED STATES MAGISTRATE JUDGE**